Filed 3/12/13  P. v. Elizalde CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JONATHAN ELIZALDE et al.,<br><br>　　　　　Defendants and Appellants. | B236831<br><br>(Los Angeles County<br>Super. Ct. No. VA118667) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.
Peter Paul Espinoza, Judge.  Affirmed in part and reversed in part.


　　　　Christian C. Buckley, under appointment by the Court of Appeal, for
Defendant and Appellant Jonathan Elizalde.


　　　　Jennifer M. Hansen, under appointment by the Court of Appeal, for
Defendant and Appellant Angel Gonzales Diaz.


　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant
Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle
and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * * * * * *

Defendants Jonathan Elizalde and Angel Gonzales Diaz were charged by amended information with a number of crimes that occurred on February 4 and 8, 2011.  The February 8 crimes, which are at issue in this appeal, were robbery (Pen. Code, § 211; count 1),[1] kidnapping (§ 207, subd. (a); count 2), false imprisonment by violence (§ 236; count 3), grand theft (§ 487, subd. (d)(1); counts 4 & 5), kidnapping in the course of a carjacking (§ 209.5, subd. (a); count 9), and carjacking (§ 215, subd. (a); counts 10 & 11).  The February 4 crimes were robbery and accessory after the fact (§§ 211, 32; counts 6, 7 & 8).  The information also included dangerous weapon allegations (§ 12022, subd. (b)(1); counts 1-7, 9-11).

Defendants were tried together with separate juries.  The juries found defendants guilty on all counts, and found all corresponding special allegations to be true.  The trial court sentenced Elizalde to an aggregate term of 22 years to life, consisting of nine years for count 10, with an additional one-year enhancement; consecutive terms of 16 months on each of counts 1, 6, and 7, consisting of one-third the midterm of three years and one-third the one-year enhancement; and a consecutive term of eight years to life on count 9, including a determinate term of seven years, plus a one-year weapon enhancement.  The trial court stayed his sentences on counts 2, 3, 4, 5, and 11 under section 654.  Elizalde was awarded 265 days of actual custody credit.  He filed a timely notice of appeal.

Diaz was sentenced to an aggregate term of 20 years to life, consisting of a determinate term of eight years to life on count 9, plus a one-year weapon enhancement; five years on count 10, plus a one-year weapon enhancement; consecutive terms of 16 months on each of counts 1, 6, and 7, consisting of one-third the midterm of three years and one-third the one-year enhancement; and a

---

[1]     All undesignated statutory references are to the Penal Code.

consecutive two-year term on count 11. The trial court stayed his sentences on counts 2, 3, 4, and 5 under section 654. He also filed a timely notice of appeal.

On appeal, both defendants contend that not all of their convictions may stand, reasoning that some of their crimes are lesser included offenses of others. Defendants join in one another's arguments to the extent they may benefit from them. They contend that carjacking (counts 10 & 11), kidnapping (count 2), and false imprisonment (count 3) are lesser included offenses of kidnapping in the course of a carjacking (count 9), and that grand theft (counts 4 & 5) is a lesser included offense of robbery (count 1). They also contend that section 654 applies to their convictions for robbery and kidnapping in the course of a carjacking. Elizalde maintains he is entitled to additional custody credits. Diaz contends that double jeopardy prohibits his punishment and conviction for counts 2, 3, 9, 10, and 11.

Respondent concedes that kidnapping and carjacking are lesser included offenses of kidnapping in the course of a carjacking, and therefore agrees that one of the carjacking counts and the kidnapping conviction must be reversed. Respondent also agrees that Elizalde's custody credits must be corrected.

We find that defendants' grand theft convictions are lesser included offenses of the robbery convictions, and that the carjacking, kidnapping, and false imprisonment convictions are necessarily included within the kidnapping in the course of a carjacking convictions. We also find Elizalde is entitled to additional custody credits. Respondent points out, and we find, that Elizalde's sentence for the weapon enhancements on counts 6 and 7 must be stricken because the weapon allegations were dismissed under section 1118.1. We find, however, that section 654 does not prohibit defendants' sentences for kidnapping in the course of a carjacking and robbery. We therefore reverse in part, affirm in part, and remand for resentencing.

3

# FACTS[2]

On the morning of February 8, 2011, Lisa Tan was alone at her husband's business, Young Star Toys. Elizalde was a former seasonal employee of Young Star Toys, working there between November 2010 and January 2011. At approximately 9:00 a.m., someone rang the doorbell. Tan saw Elizalde standing outside with Diaz, whom Elizalde introduced as his brother. Tan assumed Elizalde was looking for work, after Elizalde said something about talking to her husband. Tan opened the door and walked toward the telephone, telling defendants she would call her husband.

But when Tan picked up the telephone, Diaz pushed the phone away and shoved Tan to the ground, telling her to " '[k]eep quiet.' " Elizalde asked Tan, " 'Where's the money?' " Confused, Tan asked defendants, " 'What are you doing?' " Elizalde responded by searching her pockets and taking her iPhone. Elizalde again demanded money, and Tan said she did not have any. Elizalde searched the store while Diaz held Tan on the floor at knifepoint. When he did not find anything, Elizalde held a different knife to Tan and again demanded money. Tan again said she did not have it. Elizalde searched Tan's husband's office, and found a bag containing $1,000.

Elizalde asked Tan where her purse was. Tan said she did not have it. Elizalde took Tan's keys for her 2003 Lexus, which were on a nearby table, and went outside. He recognized her car from having worked at Young Star Toys before. Tan's purse was in the Lexus and contained envelopes with $1,000 cash. When Elizalde returned, he demanded the personal identification number (PIN) for Tan's credit card. Tan told him she did not use a PIN for her credit card. Elizalde retorted that Tan had made purchases for the business with her credit

---

**2**     Because this appeal concerns only the crimes which occurred on February 8, 2011, we will not summarize those facts relevant to the February 4, 2011 robberies, except in passing.

card, and she had used a PIN. He held his knife to her neck, and when she again told him she did not have a PIN, Elizalde punched her in the face and neck and kicked her. While Elizalde was beating Tan, someone rang the doorbell.

Elizalde opened the back door, leading to the business's warehouse. He grabbed a key for an Isuzu truck owned by the business, which was parked in the warehouse. Elizalde told Diaz to bring Tan to the truck. Elizalde again held his knife to Tan and threatened to kill her if she did not give him the PIN. Diaz restrained Tan as Elizalde taped Tan's arms to her side and taped her mouth and neck. Diaz pushed Tan into the back of the truck. Elizalde opened the warehouse's roll-up door. He grabbed a 32-inch Vizio television, still in its box, from the business, and put it in the back of the truck.

Tan heard the truck's engine start and felt it drive away. Although Tan was bound, she slid to the door at the back of the truck and tried to open it. She also pulled the tape away from her mouth. The road was bumpy, and the truck's door opened slightly. Tan was able to open it the rest of the way and jumped out of the still moving truck.

Tan saw Elizalde driving her Lexus. She started to run away, but Elizalde saw her, stopped the Lexus and began chasing her on foot. Tan saw a man and a woman and screamed for them to " '[c]all the police.' " Elizalde ran back to the Lexus and drove away.

Diana Villanueva saw Tan running, bound with plastic tape. She called 911.

Tan went back to the warehouse. The man who rang the doorbell was sitting on his car. He used scissors to cut the tape from Tan's mouth. She asked him to call 911.

Tan provided responding officers with copies of Elizalde's social security card and driver's license, which were in his employment file.

On February 9, 2011, police pulled over Elizalde's girlfriend, Lidia Viera, who was driving her black Infiniti (which had been used in the February 4

5

robberies and identified by witnesses). Elizalde was a passenger, and as he got out of the vehicle he said, " 'If it wasn't for my girlfriend, I would still be running.' " Two knives were found when the vehicle was searched; one in the passenger door compartment, and another under the passenger seat where Elizalde had been sitting. The Vizio television taken from Young Star Toys was in the trunk. Viera said the television did not belong to her and that Elizalde had put it in the trunk.

Tan identified Elizalde and Diaz from six-pack photographic arrays. She also identified a Betty Boop purse and red Chinese envelope which were found in a search of Diaz's residence as belonging to her. She additionally identified a sweatshirt found at Diaz's house as the one worn by Elizalde during the ordeal.

Tan's Lexus was located on February 13, 2011. The knife Diaz used was found in the car.

## DISCUSSION

### 1. Lesser Included Offenses

Section 954 sets forth the general rule that a defendant may be convicted of multiple offenses based on a single act or indivisible course of conduct. Nevertheless, "there is an exception to the general rule permitting multiple convictions. 'Although the reason for the rule is unclear, this court has long held that multiple convictions may not be based on necessarily included offenses.' [Citations.]" (*People v. Ortega* (1998) 19 Cal.4th 686, 692.) When deciding whether a defendant's multiple convictions are proper, we apply the statutory elements test. (*People v. Reed* (2006) 38 Cal.4th 1224, 1231.) "Under the elements test, a court determines whether, as a matter of law, the statutory definition of the greater offense necessarily includes the lesser offense." (*People v. Parson* (2008) 44 Cal.4th 332, 349.) "[W]e look to the two statutes to determine whether in the defendant's commission of the greater offense, his or her actions necessarily would satisfy all of the elements of the lesser offense." (*People v. Rundle* (2008) 43 Cal.4th 76, 143.)

6

### a. Kidnapping, carjacking, and false imprisonment

Defendants contend they were improperly convicted of kidnapping (count 2) and carjacking (counts 10 & 11) because those offenses are lesser included offenses of kidnapping in the course of a carjacking (count 9). Respondent agrees that carjacking and kidnapping are lesser included offenses of kidnapping during the course of a carjacking.

Section 209.5 provides, in relevant part, that "[a]ny person who, during the commission of a carjacking and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking shall be punished by imprisonment in the state prison for life with the possibility of parole." (§ 209.5, subd. (a).) It is well settled that carjacking is a lesser included offense of kidnapping in the course of a carjacking because "a violation of [section] 209.5 'during the commission of a carjacking' requires a completed offense of carjacking." (*People v. Contreras* (1997) 55 Cal.App.4th 760, 765.)

By the same logic, kidnapping is a lesser included offense of kidnapping in the course of a carjacking, because a violation of section 209.5 requires a completed kidnapping to occur. (§ 209.5, subd. (a).) Attempted kidnapping is a lesser included offense of attempted kidnapping in the course of a carjacking. (*People v. Medina* (2007) 41 Cal.4th 685, 701-702.) By analogy, kidnapping is a lesser included offense of kidnapping to commit a *robbery*. (See § 209, subd. (b)(1) ["Any person who kidnaps or carries away any individual to commit robbery . . . shall be punished by imprisonment in the state prison for life with the possibility of parole."]; *People v. Lewis* (2008) 43 Cal.4th 415, 518 ["simple kidnapping is a necessarily included offense of kidnapping to commit robbery, the latter having an additional element of intent to rob that arises before the kidnapping commences"].) Consequently, we hold that kidnapping is a lesser included offense of kidnapping in the course of a carjacking, and the convictions on count 2 must be reversed.

7

Defendants and respondent disagree, however, whether the convictions on count 9 of kidnapping in the course of a carjacking preclude the convictions on both counts 10 and 11 of carjacking. Defendants contend they could not lawfully be convicted of two counts of carjacking, as two cars were taken from a single victim during a single course of conduct. Respondent contends that reversing both counts would constitute an unwarranted windfall.

Courts look to robbery cases for guidance in interpreting the carjacking statute, given the similarity of the elements and statutory language used in the robbery and carjacking statutes. (See, e.g., *People v. Gray* (1998) 66 Cal.App.4th 973, 984; *People v. Hamilton* (1995) 40 Cal.App.4th 1137, 1142-1143; *People v. Medina* (1995) 39 Cal.App.4th 643, 650.) A defendant may be convicted of multiple counts of carjacking when a single car is taken from multiple victims, just as a defendant may be convicted of multiple counts of robbery if property is taken from victims jointly possessing that property. (*Hamilton*, at pp. 1143-1144.) This case presents unusual facts because here, two cars were taken from one victim during a kidnapping in the course of carjacking.

A defendant may not be convicted of separate counts of robbery for taking more than one item from a solitary victim during a single course of conduct. (*People v. Irvin* (1991) 230 Cal.App.3d 180, 185; *People v. Gamble* (1994) 22 Cal.App.4th 446, 450-451.) That is because "the central element of the crime of robbery [is] the force or fear applied to the individual victim in order to deprive him of his property" (*People v. Ramos* (1982) 30 Cal.3d 553, 589), and not the number of items actually taken. (See *Irvin*, *supra*, at pp. 184-185.) We can discern no reason why this rule should apply differently when two defendants, acting in concert, take two vehicles from the same victim in the single course of a kidnapping to commit carjacking. (See, e.g., *People v. Coffey* (1911) 161 Cal. 433, 442-443.) Accordingly, the convictions on both counts 10 and 11 must be reversed.

8

Defendants also contend that false imprisonment is a lesser included offense of kidnapping, and is therefore also a lesser included offense of kidnapping in the course of a carjacking. Section 236 prohibits the "unlawful violation of the personal liberty of another." False imprisonment is a felony when, as here, it was "effected by violence, menace, fraud, or deceit." (§ 237, subd. (a).) Kidnapping occurs when a defendant "forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county." (§ 207, subd. (a).) It has repeatedly been held that the crime of false imprisonment is necessarily included in the crime of kidnapping. (See *People v. Apo* (1972) 25 Cal.App.3d 790, 796; *People v. Gibbs* (1970) 12 Cal.App.3d 526, 547.)

Respondent asks us to conclude that felony false imprisonment *by violence*, of which defendants were convicted in count 3, is not necessarily included in kidnapping during the commission of a carjacking, because a kidnapping may be committed by instilling fear *without violence*. However, the question is not whether the lesser offense of false imprisonment can be committed in a different manner than the greater offense of kidnapping, but whether the greater offense cannot be committed without also committing the lesser offense. (*People v. Sanders* (2012) 55 Cal.4th 731, 739.) As numerous cases have held, it is impossible to kidnap someone without also violating "the personal liberty" of the kidnapped person. (§ 236; see also *People v. Apo*, *supra*, 25 Cal.App.3d at p. 796; *People v. Gibbs*, *supra*, 12 Cal.App.3d at p. 547.) As such, false imprisonment is a lesser included offense of kidnapping, and also a lesser included offense of kidnapping during the commission of a carjacking. Therefore, defendants' convictions on count 3 must be reversed.

b. **Grand theft and robbery**

Defendants also contend that the two counts of grand theft auto (§ 487, subd. (d)(1); counts 4 & 5) are lesser included offenses of the robbery count.

9

Respondent urges that the robbery count was directed at the taking of personal items from the victim, whereas the grand theft counts were for the taking of the victim's automobiles. "Theft, in whatever form it happens to occur, is a necessarily included offense of robbery," which includes the additional element of force and fear. (*People v. Ortega*, *supra*, 19 Cal.4th at p. 699.) "[G]rand theft is simply one of the two degrees of the general crime of theft, and . . . the theft of an automobile is simply one of the many forms of theft that constitute grand theft." (*Id*. at p. 698.) As such, a defendant may not be convicted of both robbery and grand theft auto based upon the same course of conduct. (*Id*. at p. 699 [reversing grand theft auto convictions because they "were based, at least in part, upon the same conduct underlying [the] robbery convictions"]; see also *People v. Gamble*, *supra*, 22 Cal.App.4th at pp. 450-452.)

Defendants contend there was one robbery, commencing with the taking of various items from Tan and her husband's business, and culminating in the taking of the two vehicles. Although the statutory elements test for lesser included offenses does not look to "the underlying facts of the case or the language of the accusatory pleading" (*People v. Sanders*, *supra*, 55 Cal.4th at p. 739) in deciding whether a theft is necessarily included in a robbery, it is necessary to determine whether the crimes were part of a single incident, or were separate crimes. (*Id*. at p. 736.) This is because "[t]he crime of robbery is not confined to the taking of property from the victim, and . . . is not completed until the robber has won his way to a place of temporary safety." (*People v. Irvin*, *supra*, 230 Cal.App.3d at p. 185.) Plainly, a defendant may be convicted of both theft and robbery if one crime has ended before the other begins. (See, e.g., *People v. Bauer* (1969) 1 Cal.3d 368, 377.) On the other hand, if they are contemporaneous, or part of the same indivisible transaction, multiple convictions are prohibited because the robbery conviction is *based* on the underlying thefts. (*People v. Gamble*, *supra*, 22 Cal.App.4th at p. 451; see also *People v. Brito* (1991) 232 Cal.App.3d 316, 326, fn. 8; *People v. Irvin*, at p. 185.)

10

In this case, regardless of the number of items taken, it is clear that a continuous robbery occurred that culminated in the taking of the vehicles. During the course of taking Tan's personal items, and robbing the business, Elizalde came upon the keys to her car, and also the keys to the business's truck. While defendants were walking Tan to the vehicles, Elizalde kept demanding her PIN for her credit card. Nothing in the evidence suggested that the robbery ever concluded, or that the car thefts were separate crimes. Although the trial court made an implied finding under section 654 that the taking of the cars was incidental to a different *intent* than the robbery, (as the court did not stay the carjacking (count 10) and robbery (count 1) convictions, section 654 has no application to whether the thefts were lesser included offenses of the robbery. (*People v. Correa* (2012) 54 Cal.4th 331, 336-337 [§ 654 concerns multiple punishment and not multiple convictions].) Therefore, defendants' convictions on counts 4 and 5 must be reversed.

## 2. Double Jeopardy

Diaz contends that double jeopardy prohibits his punishment and conviction for counts 2, 3, 9, 10, and 11. He is mistaken. Although the double jeopardy clause protects against successive prosecutions, the clause does not apply to prevent multiple convictions or multiple punishments resulting from, as here, a single trial. (*People v. Reed* (2000) 78 Cal.App.4th 274, 281; *People v. Scheidt* (1991) 231 Cal.App.3d 162, 169-170; see *People v. Tideman* (1962) 57 Cal.2d 574, 578-584.)

## 3. Section 654

Section 654 precludes multiple punishments for a single act or indivisible course of conduct punishable under more than one criminal statute. (§ 654.) The intent and objective of the actor determines whether a course of conduct is divisible and gives rise to more than one act under section 654. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) If all of the offenses are incidental to one objective, the court may punish the defendant for any one of the offenses, but not

11

for more than one offense. (*People v. Perez* (1979) 23 Cal.3d 545, 551.) However, the intent and objective test should not too broadly or amorphously define intent for purposes of section 654, because doing so " 'would impermissibly "reward the defendant who has the greater criminal ambition with a lesser punishment." ' " (*People v. Morelos* (2008) 168 Cal.App.4th 758, 769.) The purpose of section 654 is to insure that punishment will be commensurate with a defendant's culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) Therefore, acts committed pursuant to independent, multiple objectives may be punished separately even if they are part of an indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 338; *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368.) The sentencing court determines a defendant's intent and objective under section 654. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162.) The trial court's determination of a defendant's separate intents is reviewed for sufficiency of the evidence, in the light most favorable to the judgment, and the reviewing court presumes in support of the trial court's findings the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

Here, the trial court did not stay defendants' convictions for robbery and kidnapping in the course of a carjacking under section 654, and therefore impliedly found the crimes involved different intents. (*People v. Coleman, supra*, 48 Cal.3d at p. 162.) Defendants contend that their robbery sentence must be stayed, as the robbery and kidnapping in the course of a carjacking were incidental to one objective. Specifically, they maintain that "the carjacking, grand thefts, and robbery all constituted one continuous course of theft related conduct . . . [and] [t]he kidnap in this case was completed to facilitate the completion of the robbery and carjacking rather than for some independent purpose unrelated to the crime in progress."

Defendants have defined their intent too broadly. In *People v. Trotter*, the defendant took three shots at a pursuing officer during a car chase. There was a

12

minute between the first and second shots, and a few seconds between the second and third. (*People v. Trotter*, *supra*, 7 Cal.App.4th at p. 366.) The court found section 654 inapplicable to the three assaults because "this was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.' " (*People v. Trotter*, at p. 368.)

We do not conclude that section 654 applies to the robbery and kidnapping-in-the-course-of-a-carjacking counts. The robbery commenced with holding Tan at knifepoint, and then hitting her and demanding money. When someone appeared at the business's door, instead of making their escape, defendants grabbed and bound Tan, placed her in the truck, and drove away. Between each of these acts, there was time to change course or take a different action. Rather, with each step defendants engaged in more and more culpable behavior, putting Tan in increasing danger. Therefore, section 654 is inapplicable to these counts and their accompanying enhancements. (*People v. Trotter*, *supra*, 7 Cal.App.4th at p. 368.)

**4.    Custody Credits**

Elizalde received 265 days of actual custody credit, and no conduct credits. He contends, and respondent agrees, that he was entitled to conduct credits. He was arrested on February 9, 2011, and sentenced on November 2, 2011, which entitles him to 267 days of actual custody credit. (*People v. Downey* (2000) 82 Cal.App.4th 899, 920 [custody credit accrues from date of arrest and includes the date of sentencing].) Because Elizalde committed violent felonies, he should have accrued conduct credit at a rate of 15 percent. (§§ 2933.1, subds. (a), (c); 667.5, subd. (c).) Therefore, as of the date he was sentenced, he should have been awarded custody credits consisting of 267 actual and 40 days of conduct credit, for a total of 307 days credit.

13

**5.     Weapon Enhancements**

Respondent contends that the trial court improperly imposed weapon enhancements on counts 6 and 7 as to Elizalde, even though these allegations were dismissed under section 1118.1.  Respondent is correct.  Accordingly, the abstract of judgment should be corrected to omit these enhancements.

## DISPOSITION

The trial court's judgment is reversed as to counts 2, 3, 4, 5, 10, and 11.  The matter is remanded for resentencing, and the trial court must recalculate defendants' presentence credits.  In making that recalculation, the trial court must award Elizalde custody credits consisting of 267 actual and 40 days of conduct credit, for a total of 307 days for the time accrued before his first sentencing.  Also, the weapon enhancements for counts 6 and 7 must be stricken.  Following resentencing, the trial court is directed to send an amended abstract of judgment to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.                    FLIER, J.

14